IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00621-RJC-DCK

| | |
|---|---|
| DIEDRE HUTCHINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ABSOLUTE RECOVERY TOWING ) | |
| AMERICAN CREDIT ACCEPTANCE, ) | |
| LLC ) | |
| PAR NORTH AMERICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Compel Arbitration And Dismiss" (Document No. 6). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

I. BACKGROUND

*Pro se* Plaintiff Diedre Hutchinson ("Plaintiff") initiated this action by filing a "Complaint" (Document No. 1) on November 6, 2020. In the Complaint, Plaintiff asserts that American Credit Acceptance, LLC ("ACA") "has violated [her] federally protected rights as a consumer and a natural person by harassment, intimidation, [and] defamation of character." (Document No. 1, p. 4). Plaintiff further alleges that ACA, Absolute Recovery ("Absolute") and PAR North America ("PAR"), together ("Defendants"), "have all come together to violate several provisions under the FDCPA and FCRA. Id. Accordingly, Plaintiff alleges that Defendants caused her "willful injury, mental anguish, defamation of character," and they have subjected her to abusive practices. Id.

This matter stems from the repossession of Plaintiff's car. (Document No. 7, p. 1). Plaintiff purchased a used Kia Sorento on credit in May 2020. Id. CarMax, the non-party dealership which sold Plaintiff the car, assigned its interest in the contract to ACA. Id. When Plaintiff "fell behind on her payments," ACA hired PAR, a national repossession forwarding company, to have the car repossessed. Id. PAR then hired Absolute, a local repossession company, "to perform the repossession." Id.

On January 29, 2021, Defendants filed "Defendants' Motion to Compel Arbitration and Dismiss" (Document No. 6) and its accompanying "Defendants' Memorandum in Support Of Motion To Compel Arbitration and Dismiss Complaint" (Document No. 7). Defendants' Motion argues that a valid arbitration agreement is in place and enforceable under the Federal Arbitration Act ("FAA"). On April 28, 2021, Plaintiff filed "Plaintiff's Re[s]ponse To Defendants[] Motion To Compel Arbitration And Dis[]miss," (Document No. 13) in which Plaintiff argues she has no obligation to arbitrate. On April 30, 2021, Defendants filed "Defendants' Reply In Support Of Motion To Compel Arbitration And Dismiss Complaint" (Document No. 14).

The pending motion has now been fully briefed and is ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

The FAA represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under Section 2 of the FAA, a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, the Supreme Court has

held that "courts must rigorously enforce arbitration agreements according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016); see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015*)*.

"Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2011). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 81 (2000).

### III. DISCUSSION

#### A. Presumption of Validity

In moving to compel arbitration and dismiss Plaintiff's claims, Defendants first argue that the "FAA says arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" (Document No. 7, p. 3) (quoting 9 U.S.C. § 2). Defendants further assert that interpretation of the FAA has created a policy "so strong that courts resolve any doubts in favor of arbitration." Id. (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

3

In response, Plaintiff asserts that as a consumer under 15 U.S.C. § 1635(a), she was never informed of her "right to rescind the agreement nor was [she] given the recission notices that come along with all consumer credit transactions." (Document No. 13, p. 1). As a result, Plaintiff argues the agreement was "false and misleading from the beginning" and is therefore "null and void according to the Fair Debt Collection Practices Act." Id.

In their reply, Defendants argue that 15 U.S.C. § 1635(a) "applies to residences, not cars." (Document No. 14, p.1); see Jeffries v. Wells Fargo Bank, NA, 2011 U.S. Dist. LEXIS 121405, at *13 (N.D. Ill. Oct. 19, 2011) (Section 1635(a)'s right to rescind does not apply to automobile financing transactions).

The undersigned recognizes the presumed validity of arbitration agreements. Further, the undersigned finds that Plaintiff has failed to reach the high bar necessary to invalidate such an agreement. The legal grounds that Plaintiff attempts to use to invalidate the agreement, as noted by Defendants, strike the undersigned as unsuitable for this particular transaction. (See Document No. 13, p.1, Document No. 14, pp, 1-2). Accordingly, the undersigned finds the arbitration agreement to be, on its face, valid.

### B. FAA Factors for Enforceability

Defendants next argue the three factors for enforcing arbitration agreements under the FAA are met. (Document No. 7, p. 4). The three factors are: (1) whether the arbitration agreement is written; (2) whether the underlying transaction involves interstate commerce; and (3) whether the arbitration agreement covers the claims. Id.; see 9 U.S.C. § 2.

#### i. Written

Defendants simply state that the agreement is in a written contract. There is no dispute that this factor is met.

### ii. Interstate Commerce

Defendants next argue that the second factor is met for four independent reasons. Id. First, "the arbitration agreement stipulates that the FAA applies." Id. Defendants quote the contract: "The Arbitration Provision is governed by the Federal Arbitration Act (9 U.S.C. § 1 et[] seq.). . ." Id. (quoting Contract at 3). Defendants argue that the Supreme Court has upheld choice of law provisions for arbitration, so the first factor is met because the agreement says that the FAA governs. Id. (see Volt Info. Scis. V. Bd. Of Trs., 489 U.S. 468, 478-79 (1989)).

Second, Defendants assert that the transaction involves interstate commerce because the "general practice of consumer financing is subject to federal control." (Document No. 7, p. 4); see Citizens Bank v. Alafabco, Inc., 539 U.S. 440, 448-49 (2006). Further, Defendants assert that such transactions must comply with federal law and regulations, such as the Truth in Lending Act. (Document No. 7 p. 5). Defendants claim the connection to federal law constitutes a second independent reason that interstate commerce is involved in the transaction. Id.

Third, Defendants state that "buying a car on credit involves interstate commerce." Id. (see Rota-McLarty v. Satander Consumer USA, Inc., 700 F.3d 690, 697-98 (4th Cir. 2012) ("'[T]he broad impact of consumer automobile lending on the national economy' is evident.")).

Finally, Defendants assert that this specific transaction involves interstate commerce. (Document No. 7, p. 5). Defendants highlight that "[t]he car Hutchinson bought is Korean, produced and manufactured by Kia Motors, a Korean company." Id. at 6. Further, Defendants point out that Kia's American arm is in California, CarMax "buys cars and transports them to sell coast-to-coast," and CarMax "is a Delaware corporation with its headquarters in Virginia." Id. Defendants also note that Plaintiff is a North Carolina resident, while ACA is based in South

5

Carolina, and money crossed state lines "(1) when ACA bought the contract from the dealership and (2) when Hutchinson made payments to ACA." Id.

Plaintiff makes no argument to the contrary. Plaintiff's only argument on the issue is that the agreement is null and void because the agreement was "false and misleading from the beginning," thereby violating the Fair Debt Collections Practices Act. (Document No. 13, p. 1). Clearly, this argument has no bearing on whether interstate commerce was involved in the agreement.

### iii. Covered by Agreement

For the third factor, Defendants argue that the arbitration agreement "is broad enough to cover Hutchinson's claims." Id. at 7. In support, Defendants argue "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. (quoting Volt, 489 at 476); see Moses H. Cone, 460 U.S. at 24-25 (any doubts about arbitrability should be resolved in favor or arbitration). Defendants note that the arbitration clause at issue covers:

> Any claim . . . that in any way arises from or related to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle . . . , or the collection or servicing of the Contract, including . . .
> - Disputes based on contract, tort, consumer rights, fraud and other intentional torts . . . ; [and]
> - Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions . . .

(Document No. 7, pp. 7-8) (quoting Contract at 3).

Citing Plaintiff's Complaint, Defendants argue that this dispute falls within the arbitration agreement because Plaintiff's claims are based on consumer rights. (Document No. 7, p. 8) (citing Document No. 1, p. 4). To that end, the arbitration agreement clearly dictates that disputes based on consumer rights related to the contract are subject to arbitration. (Document No. 7, pp. 7-8)

6

(citing Contract at 3). Plaintiff concedes that this dispute arose over issues related to her consumer rights: "American Credit Acceptance, LLC has violated my federally protected rights as a consumer and a natural person by harassment, intimidation, defamation of character." (Document No. 1, p. 4). Defendants also note that Plaintiff's claims are based on the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, which are laws, thus clearly covered by the arbitration agreement. (Document No. 7, p. 8).

Plaintiff, again, makes no meaningful counterargument to these arguments set forth by Defendants.

The undersigned finds that all factors are met, and the FAA applies to this agreement. Despite the absence of the full contract from the record, Defendants have provided sufficient proof of the agreement's existence for the undersigned to conclude that a written agreement exists. Both sides refer to the agreement, and Defendants have included sufficient text from the agreement in their motion to conclude that it is written. Each of the issues raised in Plaintiff's Complaint are explicitly covered in the terms of the agreement. (Document No. 1) (Contract at 3).

For the second factor, the undersigned acknowledges that the transaction does involve interstate commerce. Defendant is persuasive and thorough in outlining different ways this transaction affects interstate commerce. Past decisions cited by Defendants, as well as the multiple states specifically implicated in this particular transaction are especially persuasive in leading the undersigned to this conclusion. In Citizens Bank v. Alafabco, Inc., the Supreme Court noted:

> No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause. Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 38-39 (1980) ("[B]anking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes"); Perez v. United States 402 U.S. 146, 154-55 (1971) ("Extortionate credit

7

Case 3:20-cv-00621-RJC-DCK   Document 15   Filed 07/27/21   Page 7 of 12

> transactions, though purely intrastate, may in the judgment of
> Congress affect interstate commerce").

(539 U.S. 52, 58 (2003)). As made clear by this decision, this kind of commercial transaction in which Plaintiff – a North Carolina resident – bought a car on credit, thereby owing money to ACA, a South Carolina organization, is clearly interstate in nature.

Third, the undersigned concludes that the agreement is sufficiently broad to cover the claims brought by Plaintiff. As suggested by Defendants, the agreement includes disputes based on consumer rights as well as those based on laws and regulations. Additionally, disputes about validity, enforceability, and arbitrability or scope are also subject to arbitration under the agreement. Plaintiff brought claims under federal law, and asserted that her consumer rights were violated, which she believes nullified the agreement. (Document No. 1, p. 4). The undersigned is unconvinced by her argument that the agreement is null and void. However, even if there were a strong case to be made that the agreement is invalid as Plaintiff suggests (Document No. 13, p. 1), the dispute on the merits would still be subject to arbitration. The crux of Plaintiff's argument goes to the merits of her claims – not the issue before the Court. The issue presented by the pending motion is whether these issues on the merits are subject to arbitration. Clearly, they are.

For the above reasons, the undersigned is satisfied that the FAA factors for enforceability are met.

### C. Issues of Arbitrability

Next, Defendants assert that even if this Court does not find that the FAA factors are met, "issues of arbitrability are for the arbitrator—not a court—to decide." Id. Defendants cite a delegation clause within the agreement: "'Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision,' are themselves subject to arbitration." Id. (citing Contract at 3). Defendant notes the general acceptance from courts that issues of arbitrability should be

delegated to the arbitrator when such delegation has been agreed to by the parties. Id. at 9 (citing Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 528 (2019)).

As explained above, the undersigned is satisfied that the FAA factors are met. The undersigned does note, however, that issues of arbitrability are clearly included as subject to arbitration in the agreement. The undersigned further notes that Plaintiff did not present any argument to the contrary. Plaintiff's only contention in response argues the invalidity of the agreement. As a result, even if the undersigned had doubt about whether the FAA factors were met, the claims would still be subject to arbitration because there is a dispute about arbitrability, and questions about arbitrability are for an arbitrator to decide.

### D. ACA's Enforcement Under Assignment Principles

Aside from the FAA factors, Defendants argue that ACA "may enforce the arbitration agreement as the car dealership's assignee." (Document No. 7, p. 9) see Setra of N.A., Inc. v. Schar, 2004 U.S. Dist. LEXIS 12821, at *22 (M.D.N.C. May 19, 2004) ("It is a general rule of law that when a valid assignment is executed, the assignee stands in the shoes of the assignor.").

The undersigned recognizes that ACA can enforce the arbitration agreement under assignment principles. The interest was assigned to ACA from CarMax (Document No. 7, p. 10), and Plaintiff makes no significant argument to refute that which Defendants put forward.

### E. PAR and Absolute's Enforcement Under Agency Principles

Defendants note that "courts have repeatedly held that – based on agency principles – an arbitration agreement applies to non-signatory defendants when the claim is based on conduct that they allegedly took as agents of the defendant with which the plaintiff agreed to arbitrate." (Document No. 7, p. 10) (citing J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988)). Defendants argue that PAR and Absolute acted under ACA's direction

9

in repossessing Plaintiff's car, any disputes over which would require arbitration. Id. To that end, Defendants argue that because ACA can enforce the arbitration as an assignee, PAR and Absolute, as agents of ACA, can as well. Id.

The undersigned finds Defendants' argument to be convincing on this issue. ACA, as the assignee, is empowered to enforce the arbitration agreement. The non-signatory repossession companies were acting under direction and on behalf of ACA. Accordingly, PAR and Absolute may also enforce the agreement as ACA's agents. The Fourth Circuit has stated "under the common law, an agent is someone who agrees to 'act on [another's] behalf[,] subject to his control' or at least not 'contrary to [his] directions.'" United States v. Rafiekian, 991 F.3d 529, 539 (4th Cir. 2021). Establishment of an agency relationship "depends on the degree of control retained by the principal over the details of the work as it is being performed." Vaughn v. N. Carolina Dep't of Hum. Res., 296 N.C. 683, 686 (1979). Here, PAR and Absolute acted to repossess the car under the instructions and "control" of ACA. Id. Within the Fourth Circuit's understanding of the common law, PAR and Absolute acted on ACA's behalf in performing the conduct that is the subject of this dispute. The undersigned is satisfied that under this definition, PAR and Absolute were agents of ACA. Thus, they too can enforce the arbitration agreement.

### F. Dismissal

Finally, Defendants call for the dismissal of Plaintiff's claims. Id. at 12. Defendants contend that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Id. (quoting Choice Hotels Int'l, Inc., 252 F.3d at 709-10 (4th Cir. 2001)). Because Defendants contend that all of Plaintiff's claims are arbitrable, Defendants move for the case to be dismissed. Id.

Plaintiff maintains that she is "under no obligation to agree to an arbitration."  (Document No. 13, p. 1).

The undersigned finds all claims brought by Plaintiff are subject to the arbitration agreement.  As suggested by Defendants, it is therefore appropriate to dismiss the claims.  The undersigned is particularly persuaded by the Fourth Circuit's holding cited in Defendant's motion, as well as a Supreme Court decision, which determined that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."  AT&T Techs. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986).  Because all issues presented in Plaintiff's complaint are explicitly included in the arbitration agreement, the undersigned finds dismissal to be the proper outcome.  The undersigned finds that the merits of Plaintiff's argument are subject to arbitration per the agreement.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Compel Arbitration And Dismiss" (Document No. 6) be granted.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude

the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: July 26, 2021

David C. Keesler
United States Magistrate Judge